***********
The Full Commission has reviewed the entire record consisting of Deputy Commissioner Ford's Order, the record of the proceedings before Deputy Commissioner Ford, the Full Commission Opinion and Award filed March 20, 2002, the additional evidence taken by Deputy Commissioner Rowell on June 27, 2002, the briefs and oral arguments presented before the Full Commission, as well as the record that was before the Full Commission for its February 17, 1999 Opinion and Award. Based upon all of the evidence of record, the Full Commission enters the following Opinion and Award.
 ***********
Based on the competent evidence of record, and the briefs and arguments of the parties, the following facts were stipulated by the parties in the pre-trial agreement:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The carrier on the risk at the time of the alleged injury by accident was Reliance Insurance Company, now the North Carolina Insurance Guaranty Association.
4. All Industrial Commission forms, pleadings, deposition transcripts, hearing transcripts and Opinions and Awards are a part of the evidentiary record.
5. All plaintiff's medical records were admitted into evidence subject to the right of either party to depose the treating physician.
 ***********
The Full Commission finds as facts the following:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable injury as a result of an occupational disease on or about March 22, 1994, involving her right foot. This claim was accepted as compensable and was assigned I.C. No. 453005. The compensable right foot condition included a Morton's neuroma and diagnosis of complex regional pain syndrome
2. I.C. No. 453005 first came before the Full Commission on July 1, 1998, on plaintiff's appeal from an Opinion and Award by former Deputy Commissioner W. Bain Jones, Jr., filed December 31, 1997, which denied plaintiff's claim that the compensable pain syndrome extended into her right upper extremity.
3. In the February 17, 1999 Opinion and Award, the Full Commission expressly made the following Findings of Fact which are relevant to the issues presented by the parties:
a. (FOF 20) On 23 June 1997, a deputy commissioner entered an interlocutory order approving Dr. Nesbit as plaintiff's treating physician, and plaintiff was ordered to cooperate with an examination by Dr. Stutesman.
b. (FOF 28) In deposition, Dr. Poehling testified that he had no indication from the reports of plaintiff's other physicians that she received incompetent care, and he agreed that all treatment recommendations were correct. Dr. Poehling had no suggestions for alternative therapy or treatment. After reviewing, Dr. Nesbit's reports, Dr. Poehling stated that he had no reason to believe Dr. Nesbit could not treat plaintiff competently.
c. (FOF 29) Plaintiff's condition is the result of her failure to comply with the treatment recommendations of her physicians that she increase her level of activity, including increasing the number of hours she works at her job. The tag room position did not aggravate or contribute to her continuing complaints of pain, and she is physically able to perform the tasks of the job. The primary reason for her condition is inactivity and resulting deconditioning.
d. (FOF 30) Plaintiff's upper extremity complaints are not medically substantiated and are not caused by the compensable foot injury. The tag room position did not cause plaintiff's upper extremity pain.
e. (FOF 31) The physician's finding of various points of maximum medical improvement in this case demonstrate how plaintiff's self-limitations on her physical activity have worsened her condition and prevented her recovery. These self-limitations were out of proportion to her pain and were unjustified. Plaintiff did not demonstrate a motivation to improve. She did not demonstrate a willingness to return to work full time in the tag room or in any other available light duty positions. Absent her self-imposed limitations, plaintiff likely would have improved and would have been able to return to work full time. Given plaintiff's noncompliance, it is unlikely that further medical intervention will improve her condition.
f. (FOF 32) Plaintiff reached maximum medical improvement no later than 16 September 1997. She has a permanent impairment rating of 20% to her left foot.
The Full Commission's Opinion and Award also contained the following Conclusions of Law which are relevant to this action:
a. (COL 1) Plaintiff unjustifiably refused to comply with her physician's recommendations that she increase her activity, including her work hours, in order to improve; therefore, her eligibility for wage loss compensation under the Act is suspended as of 16 September 1997. N.C. Gen. Stat. §§ 97-25, 97-32.
b. (COL 2) Plaintiff is not entitled to payment for medical treatment after 16 September 1997 due to her refusal to comply with the treatment instructions of her physicians to increase her physical activity, including work activity. Absent such compliance, further medical treatment is unlikely to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
c.(COL 3) In order to reinstate benefits, plaintiff must comply with the following work schedule: Plaintiff must begin working four hours a day regularly for a period of two weeks, then increase her daily work schedule by one hour each successive week until she reaches a regular schedule of eight hours per day. N.C. Gen. Stat. § 97-25.
This decision was not appealed by either party and is now final and binding on all parties in this action.
4. On April 5, 1999, plaintiff filed a Form 18 which asserted a worsening of plaintiff's complex regional pain syndrome while working in the sorting tags/tag room position. Plaintiff stated that her disability started on November 6, 1997. This claim was assigned I.C. No. 921804.
5. Pursuant to a Form 33, I.C. Nos. 453005 and 921804 were set for hearing before Deputy Commissioner Ford on December 15, 1999. At this hearing, Deputy Commissioner Ford concluded that three issues were raised: (1) whether plaintiff sustained a change of condition; (2) whether plaintiff complied with the February 17, 1999 Full Commission Opinion and Award; and if (1) and (2) were affirmative, then (3) what compensation was plaintiff entitled to receive.
6. On September 25, 2000, Deputy Commission Ford filed an Order in which he found that there was no change of condition with respect to plaintiff's right foot, that plaintiff failed to comply with the executory order contained in the February 17, 1999 final Opinion and Award in I.C. No. 453005, and that plaintiff filed a new claim in I.C. No. 921804. Deputy Commissioner Ford denied plaintiff's request to reconsider the Award in I.C. No. 453005, but granted an evidentiary hearing concerning plaintiff's claim in I.C. No. 921804.
7. I.C. Nos. 453005 and 921804 came before the Full Commission on appeal by plaintiff from the Order of Deputy Commissioner Ford. In his Order Deputy Commissioner Ford held that the Full Commission's February 17, 1999 Opinion and Award in I.C. No. 453005 was final and binding on the parties. Plaintiff appealed to the Full Commission seeking a full evidentiary hearing pursuant to N.C. Gen. Stat. § 97-42 on the issue of change of condition, as well as the claim of a new injury in I.C. No. 921804.
8. In its Opinion and Award filed March 20, 2002 the Full Commission decision, authored by former Commissioner Riggsbee, held that plaintiff was entitled to an evidentiary hearing and remanded the action to a Deputy Commissioner for the purpose of receiving evidence including medical depositions. The Commission directed that the issues to be addressed at the evidentiary hearing were: (1) whether plaintiff complied with her physician's treatment plan and reasonably sought employment sufficient to remove the N.C. Gen. Stat. § 97-32 suspension of benefits; (2) whether plaintiff sustained a compensable injury to her right upper extremity in I.C. No. 921804 that was different from the condition for which compensation was previously sought and denied in I.C. No. 453005; and if so, (3) what benefits, if any, was plaintiff entitled to receive.
9. Following the hearing before Deputy Commissioner Rowell, the parties took the depositions of Drs. Mark McManus, Gary Poehling and Hans Hansen, as well as physical therapist Debbie Craig. These depositions, additional medical records and the transcript of the testimony at the hearing are part of the evidence of record.
10. The medical opinions of Drs. McManus, Poehling and Hansen, none of whom are authorized treating physicians, support findings that plaintiff's complex regional pain syndrome migrated from her lower extremity to the upper extremity, that the tag room position exacerbated the upper extremity pain syndrome and that as of December 1997 and continuing plaintiff is unable to work in any job due to the complex regional pain syndrome in her upper and lower extremities. At the hearing before Deputy Commissioner Rowell, plaintiff presented no evidence that she has made any effort to seek employment or to comply with the February 17, 1999 Opinion and Award. Additionally, plaintiff presented no evidence of a new onset of an occupational disease or new injury in I.C. No. 921804. The issues concerning plaintiff's right upper extremity condition and its relationship to the tag room job and to the compensable condition in her right foot have previously been litigated and ruled upon by the Full Commission. The Full Commission decisions on these issues were not appealed and therefore are final and binding on the parties.
11. The only issue remaining for Commission consideration is whether plaintiff sustained a change of condition. Defendants argue, and the Full Commission agreed with this argument in its prior Opinions and Awards, that plaintiff's own actions by refusing to return to work and by failing to comply with recommended medical treatment caused the worsening of her complex regional pain syndrome. The March 20, 2002 Full Commission Opinion and Award authored by former Commissioner Riggsbee stated in Conclusion of Law 3 that: "evidence that plaintiff's condition has changed, and particularly that it has gotten worse, does not purge the prior finding that plaintiff failed to accept suitable employment and thereby is not entitled to benefits under N.C. Gen. Stat. § 97-32. Therefore, mere evidence that plaintiff's condition has worsened is not relevant to the issues before the Commission."
12. However, the recently submitted uncontroverted medical evidence in the deposition testimony of Drs. Poehling, Hansen and McManus shows that plaintiff was not capable of work in any employment after December 18, 1997 due to the pain syndrome in both upper and lower extremities. Dr. McManus explained it is typical for physicians to recommend in the early stages of complex regional pain syndrome that a patient continue to be active and perform work, or the condition would deteriorate. There is no medical evidence in the record that since December 1997 plaintiff was capable of returning to work in any employment or that working would improve her condition.
13. Plaintiff has previously been awarded 20% permanent partial disability compensation for the impairment to her left foot. It is unclear from the record whether this compensation has already been paid to plaintiff.
 ***********
Based upon the findings of fact, the Commission enters the following:
 CONCLUSIONS OF LAW
1. The February 17, 2000 Opinion and Award is final and is binding on the parties. N.C. Gen. Stat. § 97-86; Hall v. Thomason Chevrolet,263 N.C. 569, 139 S.E.2d 857 (1965). See, Grantham v. R.G. BarrierCorp., 127 N.C. App. 529, 491 S.E.2d 678 (1997), rev. denied, 347 N.C. 671,500 S.E.2d 86 (1998) (law of case doctrine applies when Commission hears case again for a different reason); West v. J.P. Stevens, 12 N.C. App. 456,183 S.E.2d 876 (1971) (change of condition does not permit relitigation of prior denial of extent of injury). The findings and conclusions that plaintiff's upper extremity complaints are not causally related to the compensable foot injury or to the tag room position are final and may not be relitigated.
2. Plaintiff did not sustain an injury by accident or contract a compensable occupational disease involving her right upper extremity in I.C. No. 921804. N.C. Gen. Stat. §§ 97-2(6); 97-53(13).
3. As of December 18, 1997, plaintiff sustained a change of condition in her left lower extremity such that she was no longer capable of work in any employment after that date, due to the combination of complex regional pain syndrome in both upper and lower extremities. N.C. Gen. Stat. § 97-47. No medical evidence was presented to apportion the extent of disability between the compensable lower extremity pain syndrome and the non-compensable upper extremity condition. Therefore, plaintiff is entitled to a resumption of total disability compensation after December 18, 1997 and continuing until further Order of the Commission. In the event that plaintiff has already been paid compensation for the permanent functional impairment to her foot, defendants are entitled to a credit for this compensation against the ongoing compensation awarded herein.
4. Plaintiff is entitled to payment by defendants of authorized medical treatment related to the compensable right foot condition. N.C. Gen. Stat. § 97-25. In the February 17, 1999 Opinion and Award, Dr. Poehling, while a noted, competent physician, specifically was not approved as one of plaintiff's treating physicians. Despite the Commission disapproval of Dr. Poehling, plaintiff continued to be treated by Dr. Poehling. Plaintiff also was treated by Drs. McManus and Hansen who were not authorized by the insurer or the Commission. Therefore, plaintiff is not entitled to payment by defendants of the medical treatment provided by these physicians. N.C. Gen. Stat. § 97-25.
5. A Commission nurse should be assigned to manage plaintiff's treatment, to assist the parties in the designation of an authorized treating physician(s), and to schedule a vocational assessment as recommended by Dr. Hansen.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall resume payment of total disability compensation to plaintiff at the rate of $298.68 per week beginning December 18, 1997 and continuing until further Order of the Commission. This amount is subject to the attorney's fee awarded below and a credit for any permanent partial disability compensation already paid plaintiff. Any accrued compensation shall be paid in a lump sum.
2. Defendants shall pay for medical treatment by authorized physicians that is related to the compensable right foot condition. A Commission nurse is HEREBY ASSIGNED to assist in the medical case management as stated in Conclusion of Law Number 5. Plaintiff is hereby ORDERED to comply with the medical treatment and to cooperate with the Commission nurse. Defendants are not responsible for payment of the medical treatment provided to date by Drs. Poehling, McManus or Hensen. However, the parties may agree to continued treatment by one or all of these physicians, and in that event, subsequent medical treatment related to the pain syndrome in plaintiff's right foot shall be provided by defendants.
3. Plaintiff's attorney is entitled to a reasonable attorney's fee of 25% of the compensation awarded in Paragraph 1 above and this amount shall be deducted from plaintiff's award and paid directly to plaintiff's counsel.
4. Plaintiff's claim in I.C. No. 921804 is DENIED.
5. Defendants shall pay the costs due this Commission.
This the 11th day of March, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER